UNITED  STATES  DISTRICT  COURT
SOUTHERN  DISTRICT  OF  OHIO
WESTERN  DIVISION

DELRICO ROBERTSON,     Case No. 1:10-cv-46
   Petitioner,


          Dlott, J.
  vs          Wehrman, M.J.


WARDEN, SOUTHERN OHIO   **REPORT AND**
CORRECTIONAL FACILITY,   **RECOMMENDATION**
   Respondent.

   Petitioner, a prisoner in state custody at the Southern Ohio Correctional Facility in

Lucasville, Ohio, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254

with the assistance of counsel from the Ohio Public Defender's Office.  This matter is before the

Court on the petition; respondent's return of writ with exhibits; and petitioner's "traverse" in

reply to the return of writ.  (Docs. 1, 7, 15).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

   On April 27, 2006, the Hamilton County, Ohio, grand jury returned an eight-count

indictment in Case No. B-0603150, charging petitioner with four counts of felonious assault in

violation of Ohio Rev. Code § 2903.11(A) (Counts One, Two, Four, and Five); three counts of

having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(3) (Counts

Three, Six and Eight); and one count of murder in violation of Ohio Rev. Code § 2903.02(A)

(Count Seven).  (Doc. 7, Ex. 1).  A firearm specification was attached to each of the felonious

assault charges and the murder count.  (Doc. 7, Ex. 1).

   The charges stemmed from three separate shooting incidents.  In its direct appeal

decision, the Ohio Court of Appeals, First Appellate District, provided the following summary of

the facts giving rise to the criminal charges based on evidence presented at petitioner's trial:[1]

### Three Shootings

This case is about three shootings that occurred between March 7, 2006, and April 5, 2006. During the jury trial, the state alleged that, on March 7, two girls were fighting on the corner of 15th and Republic Streets in Cincinnati. According to Lawrence Maupin, Michael Willis attempted to break up the fight. Maupin testified that he had heard Robertson say, "Don't break it up." Willis ignored Robertson, and Robertson shot Willis three or four times in the back. Jamisha Willis, Michael's sister, testified that she arrived at the scene after her brother had been shot, and that she saw bullet wounds to his buttocks and thigh.

Two and a half weeks later, on March 25, Andre Hayes was operating a bootleg cab in Cincinnati. The state alleged that Hayes had picked up Robertson and had taken him to get pizza. Two days later, Hayes again picked up Robertson. Robertson asked Hayes to take him to an apartment complex. While on the way to the apartment complex, Robertson told Hayes to stop in the Over-the-Rhine area of Cincinnati. After Robertson had exited from the van, he shot Hayes in the groin.

Nine days after Hayes was shot, Matthew Cox and three teenage girls drove from Northern Kentucky to Race Street in Cincinnati to purchase heroin. One of the girls, Christina Julian, had arranged the sale with Amond Raney. While Raney was selling Julian heroin on the passenger side of Cox's car, Robertson ran up to the driver's side. The state alleged that Robertson had shot Cox in the head, and that Cox had died almost instantly.

### The Investigation

Detective Robin Upchurch investigated the Willis shooting. According to Detective Upchurch, she spoke with Willis, and he eventually identified the person who had shot him. While that investigation was progressing, Officer Scott Johnson was investigating the Hayes shooting. According to Officer Johnson, in addition to providing a description of the man who shot him, Hayes stated that the shooter had a stutter, and that the shooter went by the nickname Detroit. Detective Upchurch testified that she had learned that she and Officer Johnson

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

were both looking for a person nicknamed Detroit.  Officer Johnson was able to match the nickname with Robertson.  When Officer Johnson showed Hayes a lineup that included Robertson's photograph, Hayes identified Robertson as the man who had shot him.  Detective Craig Ball testified that fingerprints were lifted from Hayes's van.  Three of the fingerprints were identified as belonging to Robertson.

While Detective Upchurch and Officer Johnson were investigating the Willis and Hayes shootings, Cox was shot.  Detective Kurt Ballman testified that witnesses had identified a person nicknamed Detroit as having shot Cox.  Tange Wilson witnessed the shooting and told police officers that Detroit was Robertson.  Later, Raney, who had been selling heroin to Cox's companions at the time of the shooting, told police officers that Robertson had shot Cox.  At trial, however, Raney changed his statement and testified that he could not identify the shooter.  Lawrence Maupin testified that he had witnessed both the Willis shooting and the Cox shooting, and he identified Robertson as the shooter in both incidents.

After Robertson had been connected to Cox's murder, police officers searched for him in the Cincinnati area.  They were unable to locate him.  About two weeks after Cox was shot, Robertson was arrested in Detroit, Michigan.

(Doc. 7, Ex. 10, pp. 2-4).

Prior to the trial, petitioner's counsel filed a motion requesting "relief from prejudicial joinder" of charges that stemmed from three separate incidents occurring "on different dates at different locations."  (*See* Doc. 7, Ex. 2).  The trial court denied the motion, and the matter proceeded to trial before a jury, which found petitioner guilty as charged.  (*See* Doc. 7, Exs. 3-4).  On February 6, 2007, the trial court issued a Judgment Entry sentencing petitioner to an aggregate prison term of fifty (50) years to life.[2]  (Doc. 7, Ex. 5).

**State Direct Appeal Proceedings**

_____

[2]Petitioner's sentence consisted of a 7-year prison term for each felonious assault offense and 3-year prison terms on the firearm specifications attached to those charges; a 4-year prison term for each weapons offense; and a 15-year to life prison term for the murder offense with an additional 3-year prison term on the firearm specification attached to that charge.  Only the sentences imposed for the felonious assaults charged in Counts One and Two and the felonious assaults charged in Counts Four and Five were to run concurrently.  (*See* Doc. 7, Ex. 5).  Therefore, the prison terms to be served consecutively amounted to 20 years for the felonious assaults with specifications; 12 years for the weapons offenses; and 18 years to life for the murder offense with specification.

Timely notices of appeal to the Ohio Court of Appeals, First Appellate District, were filed by both petitioner and his trial counsel.  (Doc. 7, Ex. 6).  With the assistance of new counsel for appeal purposes, petitioner filed an appellate brief raising fifteen assignments of error, including the following claims:

> 1.  The trial court erred to the prejudice of appellant's 14th Amendment right to due process of law by entering judgment of conviction after a trial at which grievous prosecutorial misconduct infected the proceedings to the extent that appellant was denied the fair trial to he which he is entitled.
>
> 2.  The trial court erred to the prejudice of appellant by permitting the admission of a grossly improper hearsay accusation against appellant by a purported victim who did not appear to testify, which violated appellant's right to confront and cross examine the purported victim under the Sixth Amendment to the U.S. Constitution and Art. I. § 10 of the Ohio Constitution, respectively.
>
> ****
>
> 8.  The trial court erred to the prejudice of appellant's Sixth Amendment rights by entering judgment of conviction after a trial at which appellant received the ineffective assistance of counsel for his defense.

(Doc. 7, Ex. 7).

On May 30, 2008, the Ohio Court of Appeals issued a Decision and Judgment Entry overruling all but one assignment of error challenging petitioner's convictions and sentences for felonious assaults involving "allied offenses of similar import."  (*See* Doc. 7, Ex. 10).  The state appellate court held that "the trial court erred when it sentenced Robertson for two felonious-assault counts for [victim] Hayes and for two felonious-assault counts for [victim] Willis." (Doc. 7, Ex. 10, p. 15).  The court vacated the sentences imposed for the four felonious assault offenses and remanded the case "for resentencing so that Robertson is sentenced for only one felonious assault for each victim."  (Doc. 7, Ex. 10, p. 15).  In all other respects, the trial court's

judgment was affirmed. (Doc. 7, Ex. 10, p. 17).[3]

Petitioner filed a timely *pro se* appeal to the Ohio Supreme Court from the intermediate appellate court's decision. (Doc. 7, Ex. 11). In his memorandum in support of jurisdiction, petitioner asserted fourteen propositions of law, including the same claims that he had raised on direct appeal challenging the propriety of the prosecutor's conduct, the effectiveness of trial counsel, and the constitutionality of hearsay evidence introduced at his trial. (*See* Doc. 7, Ex. 12). The State filed a cross-appeal from the appellate court's decision on the allied-offense sentencing issue. (Doc. 7, Exs. 13, 15).

During the pendency of the appeal and cross-appeal, counsel from the Ohio Public Defender's Office entered an appearance and filed a memorandum in support of jurisdiction on petitioner's behalf; in the memorandum filed by counsel, five propositions of law were asserted, which included the following claims:

> **Proposition of Law II:** When a prosecutor asks a jury to infer crimes based on the damage caused, argues facts outside the record to blame the defendant for the weaknesses in the State's case, and improperly asks the jury to use evidence in one joined charge as proof of other charges, the prosecutor has committed prosecutorial misconduct. This misconduct violates a defendant's due process right to a fair trial, and a court commits plain error by failing to address it, under Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.

> **Proposition of Law III:** When the State introduces the testimony of victims and witnesses through third parties, their statements constitute hearsay and violate a defendant's confrontation rights under the Sixth Amendment to the United States Constitution, and Section 10, Article I, of the Ohio Constitution. Furthermore, when the improper statements provide the only unbiased information about a

---

[3]Two of the judges on the three-judge appellate panel wrote separate opinions concurring in the judgment on the "allied offense" sentencing issue. (Doc. 7, Ex. 10, p. 17). One of the concurring judges also discussed three "evidentiary miscues," which should not have happened; although the judge agreed that the three "miscues" did not amount to "reversible error in this case," he emphasized as a "caveat" that "[i]n a closer case, any could result in reversal." (Doc. 7, Ex. 10, pp. 17-18).

charge, and conviction follows, the violation constitutes plain error.

**Propostition of Law IV:**  When trial counsel, in a criminal case, fails to renew a meritorious motion for relief from prejudicial joinder, fails to maintain an objection to hearsay introduc[]ed in violation of a defendant's confrontation rights, and fails to object to prosecctorial misconduct, counsel renders ineffective assistance, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Section[s] 10 and 16, Article I of the Ohio Constitution.

(Doc. 7, Ex. 14).  Counsel also filed a brief responding to arguments raised by the State in the

cross-appeal.  (Doc. 7, Ex. 16).

On October 29, 2008, the Ohio Supreme Court denied both leave to appeal and leave to

cross-appeal; the appeal was summarily dismissed "as not involving any substantial

constitutional question."  (Doc. 7, Ex. 17).

**Resentencing**

Next, on February 17, 2009, petitioner was resentenced in accordance with the Ohio

Court of Appeals' May 30, 2008 order remanding the case for resentencing on the four felonious

assault counts.  (Doc. 7, Ex. 18).  Specifically, on resentencing, Counts One and Two and Counts

Four and Five were merged as allied offenses of similar import.  (Doc. 7, Ex. 18).  However,

because the trial court had previously ordered the two sets of sentences to be served

concurrently, the aggregate sentence of fifty (50) years to life remained the same.  (*See* Doc. 7,

Exs. 5, 18).  With the assistance of new court-appointed counsel, petitioner challenged the

resentencing decision in a delayed appeal granted by the Ohio Court of Appeals, First Appellate

District.  (*See* Doc. 7, Exs. 19-21).  Although the matter was still pending before the Ohio Court

of Appeals when respondent filed the return of writ in the instant habeas case, the Court may

take judicial notice of court records that are available on-line to members of the public.  *See*

6

*Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).  The Hamilton County Clerk of Court's on-line docketing records for Case No. B-0603150 (found at www.courtclerk.org/case_ summary) reflect that the Ohio Court of Appeals affirmed the resentencing decision on June 23, 2010, and on November 23, 2010, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed petitioner's appeal in that matter.  Petitioner does not raise any claim challenging the resentencing decision in this federal habeas proceeding.[4]

**Federal Habeas Corpus**

Counsel from the Ohio Public Defender's Office filed the instant federal habeas corpus petition on petitioner's behalf in January 2010.  (Doc. 1).  The petition alleges three grounds for relief:

> **Ground One:**  The prosecutor committed prosecutorial misconduct when he (1) asked the jury to infer crimes based on the damage caused, (2) argued facts outside the record blaming the defendant for weaknesses in the State's case, and (3) improperly asked the jury to use evidence in one joined charge as proof of separate charges as well.  That misconduct violated Mr. Robertson's due process right to a fair trial.

> **Supporting Facts:**  (1) In opening statements, throughout trial, and in closing argument, the prosecutor argued that Mr. Robertson engaged in a course of conduct involving a pattern of randomness.  Further, the prosecutor asked the jury to use evidence of one charge as evidence of the other, distinct charge.  (2) The prosecutor made an emotional appeal to the jury in closing by asking them to put themselves in the place of the victims.  (3) The prosecutor excused weaknesses in his own case by arguing in closing that his witnesses were threatened or bribed by the defendant when there was no evidence in the record to support his claim.

---

[4]It is noted that the Hamilton County Clerk's on-line docketing records for Case No. B-0603150 also reflect that petitioner's counsel in the instant action filed a motion on June 1, 2011 on petitioner's behalf with the Hamilton County Court of Common Pleas, requesting leave to file a delayed motion for new trial based on "newly discovered evidence."  The State filed a memorandum opposing the motion, and it appears from the docket that the matter is currently pending before the trial court for ruling.  Petitioner does not allege any claim stemming from his delayed motion for new trial as a ground for relief in the instant action.

**Ground Two:**  Mr. Robertson's confrontation rights were violated when the State introduced the testimony of non-testifying witnesses through third parties.  Mr. Robertson was prejudiced by that introduction because the statements improperly bolstered the State's case and represented the only unbiased eyewitness testimony regarding one of the discrete acts.

**Supporting Facts:**  (1) Jamisha Willis, the victim's sister, testified to what the victim told her after the event.  Ms. Willis was not present, and had no direct knowledge of the facts that she testified to.  (2) Officer Upchurch testified about statements that Michael Willis, a victim, told h[er] identifying Mr. Robertson.  Michael Willis did not testify.  (3) Officer Upchurch also testified that another officer told h[er] that the victim in a different crime accused Mr. Robertson of being involved in this offense.  That person never testified, nor did the other officer.

**Ground Three:**  Mr. Robertson received ineffective assistance of counsel when counsel failed to maintain an objection to prejudicial hearsay in violation of Mr. Robertson's confrontation rights and failed to object to prosecutorial misconduct th[at] violated Mr. Robertson's due process right to a fair trial.

**Supporting Facts:**  The same facts as noted under grounds one and two apply here as well, given that counsel did not object to many of the problems noted.

(Doc. 1, pp. 5, 6, 8).

## II.  OPINION

### A.  Petitioner Defaulted And Has Waived The Prosecutorial Misconduct Claims Alleged In Ground One, As Well As The Ineffective Assistance Of Counsel Claim In Ground Three Stemming From Trial Counsel's Failure To Object To The Alleged Misconduct At Trial

In Ground One of the petition, petitioner claims that he was denied a fair trial when the prosecutor engaged in the following misconduct during closing rebuttal argument:[5] (1) he asserted that petitioner's offenses constituted a "course of conduct" and, more specifically, contended that the jury could use evidence supporting one charge as proof of petitioner's guilt on

---

[5]Petitioner has suggested that some of the cited errors occurred throughout the trial proceeding.  However, upon review of the record, it appears that the prosecutor did not suggest a "course-of-conduct" theory of guilt, appeal to the jury's sympathies, or make any arguments not based on the evidence about witness intimidation until closing rebuttal argument.

other separate charges; (2) he made an emotional appeal to the jury by asking them to consider

how victims Hayes and Cox felt when they saw a gun pointed at them while trapped in cars and

unable to get away; and (3) he argued that certain witnesses were intimidated, threatened or

bribed not to come forward to testify against petitioner "when there was no evidence in the

record to support [such a] claim." (Doc. 1, p. 5; Doc. 15, pp. 6-7; *see also* Doc. 7, Trial Tr.

1210, 1222-24, 1226, 1231).

Petitioner cited the three instances of impropriety in arguing on appeal to both the Ohio

Court of Appeals and Ohio Supreme Court that the prosecutor's misconduct deprived him of a

fair trial. (*See* Doc. 7, Ex. 7, pp. 8-9, 11-13; Ex. 12, p. 6; Ex. 14, pp. 7-9). As respondent has

pointed out in the return of writ (*see* Doc. 7, Brief, p. 17), although petitioner listed other

examples of prosecutorial misconduct in his state appellate brief, he only seeks federal habeas

review of conduct that the Ohio Court of Appeals determined was improper. Specifically, the

Ohio Court of Appeals, which was the only state court to issue a reasoned decision addressing

petitioner's allegations, ruled in relevant part as follows in finding that the particular instances of

misconduct alleged herein did not amount to reversible error:

> Robertson contends that the assistant prosecutor made improper remarks during
> closing arguments. Defense counsel objected to none of the remarks, so we are
> limited to plain-error review. During closing argument, one of the assistant
> prosecutors argued that the jury could use the evidence in Hayes's shooting to
> prove that Robertson had committed the other two shootings, and that the jury
> could consider the horror felt by Hayes and Cox. And according to Robertson,
> the prosecutor improperly insinuated that Robertson had threatened Willis and
> Raney.
>
> . . . .[W]e are not persuaded by the state's argument that the three shootings were
> part of a course of conduct by Robertson. So it was improper for the prosecutor
> to suggest that the jury could consider the evidence of one offense as evidence of
> a separate offense. And the remarks about the horror felt by the victims and the
> possibility of witness intimidation were not based on evidence that had been

9

> introduced at trial, so the remarks were improper.  But even though the remarks were improper, we cannot say that the trial court's failure to strike the remarks amounted to plain error.  The outcome of the trial would not have been different absent the remarks.

(Doc. 7, Ex. 10, p. 9).

Respondent contends in the return of writ that petitioner procedurally defaulted and has waived the prosecutorial misconduct claims alleged in Ground One because petitioner did not lodge contemporaneous objections at trial when the challenged remarks were made, and the state appellate courts relied on that state procedural bar to review in ruling that the prosecutor's misconduct did not amount to plain error.  (Doc. 7, Brief, pp. 15-22).  Respondent's argument has merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).  If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review.  *See O'Sullivan,* 526 U.S. at 847-48; *Harris v.*

10

*Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also*

*Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may

be barred from considering an issue of federal law from a judgment of a state court if the

judgment rests on a state-law ground that is both "independent" of the merits of the federal claim

and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The

Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default, and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner

fails to comply with a state procedural rule that required him to have done something to preserve

the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v.*

*Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable
> to the petitioner's claim and that the petitioner failed to comply with the rule; (2)
> the court must determine whether the state courts actually enforced the state
> procedural sanction; (3) it must be decided whether the state procedural forfeiture
> is an adequate and independent state ground upon which the state can rely to
> foreclose review of a federal constitutional claim; and (4) if the court has
> determined that a state procedural rule was not complied with and that the rule
> was an adequate and independent state ground, then the petitioner is required to
> demonstrate that there was cause for him not to follow the procedural rule and
> that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138

11

(6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[6] In cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

---

[6]In *Harris,* the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane,* 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

Finally, the state court's adequate and independent finding of procedural default will preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has argued, petitioner committed a procedural default by failing to lodge contemporaneous objections to the prosecutor's comments during closing argument. Ohio's contemporaneous objection rule is a firmly-established, adequate and independent state procedural rule, which serves to foreclose federal habeas review when relied on by the state courts as a basis for denying relief. *See, e.g., Goodwin v. Johnson,* 632 F.3d 301, 315 (6th Cir. 2011) (citing *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001)); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *see also State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001) (noting that Ohio's "waiver rule," which "requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review," is "of long standing" and "goes to the heart of the adversary system of justice"). The Sixth Circuit has repeatedly held that "plain error" review by the state appellate court "constitutes enforcement of Ohio's contemporaneous objection rule." *See Williams v. Bagley,* 380 F.3d 932, 968-69 (6th Cir. 2004) (and Sixth Circuit cases cited therein); *see also Goodwin*, 632 F.3d at 315.

The Ohio Court of Appeals clearly and expressly enforced the state procedural bar to

review in rejecting petitioner's allegations of prosecutorial misconduct on direct appeal. The court explicitly stated that because defense counsel had not objected to any of the prosecutor's challenged remarks, it could only conduct a "limited" review for "plain error." (Doc. 7, Ex. 10, p. 9). The Ohio Supreme Court's later unexplained entry denying petitioner leave to appeal and summarily dismissing the appeal "as not involving any substantial constitutional question" must be presumed to rely on the same state procedural ground. *See Taqwiim v. Johnson,* No. 99-3425, 2000 WL 1234322, at **3 (6th Cir. Aug. 22, 2000) (citing *Levine v. Torvik,* 986 F.2d 1506, 1517 n.8 (6th Cir. 1993), and *Ylst,* 501 U.S. at 803-04).

Therefore, the allegations of prosecutorial misconduct set forth in Ground One of the petition are barred from review in this proceeding unless petitioner can demonstrate cause for and prejudice from his procedural default or that a fundamental miscarriage of justice will occur if the claims are not considered on the merits by this Court. *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray,* 477 U.S. at 485.

Petitioner has not demonstrated that failure to consider the claims will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). Such a claim requires a showing of factual innocence, not mere legal insufficiency. *See House v. Bell,* 547 U.S. 518, 538 (2006); *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff,* 643 F.Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011). In order to overcome a procedural bar to habeas review based on a claim of actual innocence, the petitioner "must show

14

that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" based on *"new reliable evidence . . . that was not presented at trial."*  *Schlup,* 513 U.S. at 324, 327 (emphasis added).  The exception is "rare" and is to be applied only in the "extraordinary case" where the "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine the confidence in the result of the trial."  *Id.* at 317, 321; *see also House*, 547 U.S. at 538.  Petitioner has made no such showing in this case.

Petitioner has alleged in Ground Three that his trial counsel was ineffective in failing "to object to prosecutorial misconduct th[at] violated [petitioner's] due process right to a fair trial." (Doc. 1, p. 8).  Although ineffective assistance of counsel may constitute cause for a procedural default, *see, e.g., Murray,* 477 U.S. at 488; *Goodwin,* 632 F.3d at 315-16, the ineffective assistance of counsel claim itself must not be procedurally defaulted.  *See, e.g., Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Taylor v. McKee,* __ F.3d __, No. 09-1433, 2011 WL 3524297, at *3-4 (6th Cir. Aug. 12, 2011); *Landrum v. Mitchell,* 625 F.3d 905, 934 (6th Cir. 2010), *petition for cert. filed,* __ U.S.L.W. __ (U.S. Apr. 4, 2011) (No. 10-9911).

Respondent contends in the return of writ that petitioner procedurally defaulted and has waived any claim of ineffectiveness stemming from his counsel's failure to object to the prosecutor's closing remarks because that particular issue was not fairly presented to the Ohio Court of Appeals on direct appeal.  (Doc. 7, Brief, p. 31).  In so arguing, respondent concedes that petitioner did assert an ineffective of assistance of counsel claim as the eighth assignment of error in his appellate brief to the Ohio Court of Appeals, and that the assignment of error included a subheading entitled "Failure to Object to inadmissible evidence, prosecutorial misconduct, etc."  (*See* Doc. 7, Brief, p. 31 & Ex. 7, pp. vi-vii, 28-29).  However, respondent

points out that petitioner did "not identify or describe any prosecutorial misconduct relating to his assertion of ineffective assistance of trial . . . counsel" in the substance of his brief.  (Doc. 7, Brief, p. 31).  Instead, petitioner argued only that his trial counsel was ineffective because he (1) did not renew petitioner's "motion for relief from prejudicial joinder" at the close of the State's case; (2) failed to object or move for a mistrial when Jamisha Willis testified about her brother's hearsay statements identifying petitioner as the person who shot him on March 7, 2006; and (3) did not object to Detective Upchurch's hearsay and opinion testimony.  (Doc. 7, Ex. 7, pp. 28-29).

"Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts."  *Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003)); *see also* 28 U.S.C. § 2254(b), (c).  It is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts. *Fulcher,* 444 F.3d at 798; *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).

Here, because petitioner did not assert in the substance of his appellate brief the factual basis of his claim stemming from counsel's failure to object to the prosecutor's improper closing remarks, he failed to satisfy the fair presentation requirement.  Although petitioner generally requested in a concluding paragraph that the Ohio Court of Appeals "review the record for instances of ineffective representation in addition to those set forth here" (*see* Doc. 7, Ex. 7, p. 29), the vague and conclusory request was insufficient to place the Ohio Court of Appeals on notice of the factual underpinning of the claim now alleged as "cause" for his procedural default

of the prosecutorial misconduct claims alleged in Ground One and as an independent ground for federal habeas relief in Ground Three.  In overruling petitioner's eighth assignment of error, the Ohio Court of Appeals, therefore, did not consider such a claim and only addressed the arguments specifically raised by petitioner in his appellate brief.  (*See* Doc. 7, Ex. 10, p. 16).

Petitioner's counsel on further appeal to the Ohio Supreme Court did assert as a proposition of law that trial counsel was ineffective for "fail[ing] to object to prosecutorial misconduct, as noted above;" the substance of the brief also contained a specific reference to "[c]ounsel's failure to object to the State's use of an improper 'course of conduct' argument throughout the proceedings, which culminated in the State's appeal to the jury to use the evidence in one charge to prove guilt in the other charges."  (*See* Doc. 7, Ex. 14, p.12). However, petitioner was unable to satisfy the "fair presentation" requirement at that late juncture because the Ohio Supreme Court lacked jurisdiction to consider issues that had not been raised to or considered by the intermediate appellate court.  *See* Ohio Const. art. IV, § 2(B)(2); *State v. Jones,* 211 N.E.2d 198 (Ohio 1965); *see also Rigdon v. Ohio Adult Parole Authority,* No. 1:08cv716, 2010 WL 3910236, at *9 (S.D. Ohio July 7, 2010) (Wehrman, J.) (citing *Leroy,* 757 F.2d at 99; *Fornash v. Marshall,* 686 F.2d 1179, 1185 n.7 (6th Cir. 1982)), *adopted,* 2010 WL 3910230 (S.D. Ohio Oct. 4, 2010) (Dlott, J.); *Harsh v. Warden, Chillicothe Corr. Inst.,* No. 1:08cv433, 2009 WL 3378246, at *1, *9 n.8 (S.D. Ohio Oct. 15, 2009) (Beckwith, J.; Black, M.J.) (and cases cited therein).  *Cf. Mayes v. Hudson,* No. 1:07cv315, 2010 WL 55963, at *9 & n.1 (N.D. Ohio Jan. 4, 2010) (O'Malley, J.) (in holding that a petitioner's "failure to raise [a] ground for relief . . . in the state appellate court on direct appeal procedurally defaulted that claim," the district court noted that "[e]ven if [the] memorandum in support of jurisdiction in the

Ohio Supreme Court could be read as having raised the claim," it must be assumed from the Ohio Supreme Court's silence as to the reasons for denying relief that it did not "ignore its own procedural rules and . . . enforced the procedural bar" prohibiting review of claims that are "not raised in the underlying appellate proceeding") (citing *Sparkman,* 94 F.3d at 203).

Accordingly, in sum, the undersigned concludes that petitioner procedurally defaulted the ineffective assistance counsel claim asserted both as an independent ground for relief in Ground Three of the petition and to establish "cause" for his procedural default of the prosecutorial misconduct claims alleged in Ground One.  In the absence of a showing of cause for his procedural defaults or that a fundamental miscarriage of justice will occur if his claims are not considered herein, both the ineffective assistance of counsel claim alleged in Ground Three and the prosecutorial misconduct claims alleged in Ground One are waived and barred from review in this proceeding.[7]

---

[7]It is noted that even if these grounds for relief had not been waived, petitioner would not be entitled to relief.  Federal habeas relief is unavailable unless the prosecutor's alleged misconduct "had a substantial and injurious effect or influence in determining the jury's verdict."  *See Calderon v. Coleman,* 525 U.S. 141, 145 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993)).  Petitioner must meet the *Brecht* standard before he can obtain relief for any constitutional error committed by the prosecutor as alleged in Count One.  *Cf. Jaradat v. Williams,* 591 F.3d 863, 867-71 (6th Cir. 2010) (holding that the prosecutor's improper comments in closing argument referring to the petitioner's post-arrest silence amounted to harmless error under *Brecht*); *Rosencrantz v. Lafler,* 568 F.3d 577, 589-92 (6th Cir. 2009) (applying *Brecht* to excuse as harmless the prosecutor's misconduct in knowingly presenting false testimony), *cert. denied,* 130 S.Ct. 2401 (2010).  Moreover, to establish that his counsel was constitutionally ineffective for failing to object to the alleged misconduct as alleged in Count Three, petitioner must demonstrate both that (1) counsel's conduct fell below an objective standard of reasonableness based on all the circumstances surrounding the case, and (2) a "reasonable probability" exists that the outcome of the trial would have been different absent counsel's errors.  *See Strickland v. Washington,* 466 U.S. 668, 687-89, 694-95 (1984).  Here, as the Ohio Court of Appeals found in addressing the ineffective assistance of counsel claims that were raised on direct appeal, the State presented "discrete" and "overwhelming" evidence in the form of eyewitness testimony to establish petitioner's guilt for each charged offense.  (*See* Doc. 7, Ex. 10, p. 16).  In addition, in closing argument delivered prior to defense counsel's closing remarks, the prosecutor properly argued that petitioner was "charged with three separate incidents" and cited the evidence establishing petitioner's guilt in each separate incident.  (*See* Doc. 7, Trial Tr. 1130-1165).  Before the jury retired to deliberate, the trial court reemphasized that point by explicitly instructing the jury that "[t]he charges set forth in the indictment constitute a separate and distinct matter" and that the jurors, therefore, "should consider each indictment and each count and the evidence applicable to each count and specification separately," stating their "findings as to each count uninfluenced by your verdict as to any other indictment or count." (Doc. 7, Trial Tr. 1234).  The court further instructed that the evidence to be considered

**B.  Petitioner Is Not Entitled To Relief Based On The Confrontation Clause Claim Alleged In Ground Two Stemming From Admission Of Certain Hearsay Testimony, Or The Corollary Ineffective Assistance Of Counsel Claim Alleged in Ground Three**

In Ground Two of the petition, petitioner alleges that his Sixth Amendment right to confront the witnesses against him was violated when the State introduced prejudicial hearsay testimony at trial through State witnesses Jamisha Willis and Detective Robin Upchurch.  (Doc. 1, p. 6; *see also* Doc. 15, p. 8).  As a corollary ground for relief, petitioner contends in Ground Three of the petition that his trial counsel was ineffective for failing to object to the hearsay testimony elicited from Jamisha Willis and Detective Upchurch during trial.  (Doc. 1, p. 8; *see also* Doc. 15, p. 9).  The testimony challenged by petitioner pertains to the March 7, 2006 shooting incident involving victim Michael Willis, who could not be located for the purpose of obtaining his presence to testify at petitioner's trial.

As background, the State first called Jamisha Willis, the victim's sister, to the stand to give testimony relating to that incident.  Jamisha testified about, among other things, the victim's injuries and her observations when she was called to the scene soon after the shooting occurred. (*See* Doc. 7, Trial Tr. 339-48).  The prosecutor then asked Jamisha whether there was "a time that you were with your brother, after the shooting, [when] you saw somebody."  (Doc. 7, Trial Tr. 348).  Jamisha responded:

Yes.  I was with my brother one time and we were all down the street and he

---

in determining the petitioner's guilt or innocence is "all the testimony received from witnesses and the exhibits admitted during trial," which "does not include the indictment, the opening statements, or closing arguments of counsel."  (Doc. 7, Trial Tr. 1236, 1238).  Upon review of the entire trial transcript, including the substantial evidence introduced at trial to establish petitioner's identity as the shooter in each incident, the entirety of the parties' closing arguments, and the court's final instructions to the jury, the undersigned concludes that it is not reasonably likely, and indeed highly unlikely, that any of the challenged, unobjected-to remarks made in rebuttal to defense counsel's arguments prejudicially affected the outcome of the trial or otherwise had a substantial and injurious effect or influence in detemining the jury's verdicts.

pointed, he said that was who shot him.

(Doc. 7, Trial Tr. 348).

At that point, defense counsel immediately lodged an objection, which was sustained.

(Doc. 7, Trial Tr. 348). The colloquy between the prosecutor and Jamisha resumed, continuing

in pertinent part as follows without any further objection:

Q. When you rode around with your brother, did your brother say something to you when you saw a certain individual?

A. When we rode down the street.

Q. You can't say what he said?

A. He just --

Q. Do you see that individual in the courtroom today?

A. Yes, I do.

Q. Where is he at?

A. Right there (indicating).

**** 

Q. Okay. And when you were with your brother and you saw that man, were any phone calls made?

A. No. I think it was one call, said he was at Race and 14th.

Q. Who made that call?

A. I called.

Q. And who did you call?

A. Upchurch.

**** 

20

Q.  And when you called Detective Upchurch, what did you tell h[er]?

A.  I just said I seen the shooter at 14th and she said she'd be out.

(Doc. 7, Trial Tr. 348-50).

On cross-examination, defense counsel elicited additional testimony from Jamisha about the victim's identification of petitioner as the shooter.  While acknowledging that she "wasn't at the scene when [her brother] was shot" and "so . . . can't say who shot him," Jamisha reiterated a number of times that the victim pointed petitioner out to her as the person who had shot him; Jamisha also testified that the person whom her brother had identified was known as "Rico" and that she herself was able to identify "Rico" from a series of photographs presented to her by Detective Upchurch.  (*See* Doc. 7, Trial Tr. 358-67).

After Jamisha was excused from the witness stand, a sidebar conference was held where defense counsel voiced concerns about Jamisha's identification of petitioner as the shooter from the series of photographs that had been presented to her by Detective Upchurch; specifically, counsel challenged Jamisha's identification of petitioner because it was based solely on information relayed to her by her brother.  (Doc. 7, Trial Tr. 370-72).  In response, the prosecutor stated:

> The information about the fact that he was the shooter was objected to on direct as to what the brother said.  So the direct examination did not bring out the fact that the brother said he was the shooter.  It was only on cross-examination that [defense counsel] has listened, at least, 15 times that witness saying that he said he was the shooter.

(Doc. 7, Trial Tr. 372).  When the trial court asked defense counsel what he wanted to do regarding the problem that had arisen during cross-examination, counsel requested the trial court to exclude and instruct the jury to disregard Jamisha's testimony on the ground that he "wasn't

21

given an opportunity to test her identification of [petitioner] as being the person who [was] pointed out to be the shooter." (Doc. 7, Trial Tr. 372-73). The trial court deferred ruling on the request until Detective Upchurch had an opportunity to testify regarding Jamisha's identification of petitioner as her brother's assailant. (Doc. 7, Trial Tr. 373-74).

Detective Upchurch, a Cincinnati police officer who participated in the investigation of the March 7, 2006 shooting, testified that she spoke with Jamisha "on several occasions" prior to meeting with the victim for the first time on March 22, 2006, and that "[a]t some point, . . . bec[a]me aware of . . . radio runs or runs that were made as far as sightings of the person who allegedly shot Mr. Willis." (Doc. 7, Trial Tr. 472-73). Upchurch stated that during the period in March when she could not speak with the victim himself, she showed a photo array containing a picture of a possible suspect to Jamisha, who had indicated "that she knew who had shot her brother;" Jamisha "stated that the person [who] shot him was not in th[at] lineup." (Doc. 7, Trial Tr. 473-74). Upchurch further testified that another suspect was identified during that same time period, and that she showed a photograph of that person to Jamisha as well at Jamisha's place of employment. (Doc. 7, Trial Tr. 478).

Upchurch stated that when she met with the victim, Michael Willis, on March 22, 2006, she obtained a description of the shooter. (Doc. 7, Trial Tr. 474-75). Defense counsel objected at that point to the admission of the description that had been relayed by the victim; the court overruled the objection after the prosecutor explained that the description was introduced "not [for] what he said, but simply [to establish] "the type of person" the police were "looking for" from that point on in the investigation. (Doc. 7, Trial Tr. 475). Upchurch then provided the following description, which she stated had been given to her by the victim: "a male black,

22

light-skinned, 5'8 to 5'9, 140, low haircut.  He goes by the name Rico and he sells dope in the area of 15th;" he also "had a quarter-size mole on his forehead."  (Doc. 7, Trial Tr. 475, 491).

Upchurch also testified that during the course of the investigation she and Cincinnati police officer Scott Johnson, who was involved in the investigation of Hayes's shooting on March 27, 2006, would talk about their "respective cases."  (Doc. 7, Trial Tr. 475-77).  When the prosecutor asked Upchurch if she and Johnson had discussed "any similarities" in their cases in terms of "descriptions, places, locations and so forth," Upchurch responded:  "Yes.  I believe that his victim picked out Mr. Robertson."  (Doc. 7, Trial Tr. 477).  Defense counsel immediately objected, and the prosecutor rephrased the question to elicit testimony that the cases both "had a connection to the Over-the-Rhine area."  (Doc. 7, Trial Tr. 477).

Upchurch further testified as follows about the impact that Cox's shooting on April 5, 2006 had on her investigation of the Willis case:

> Through discussion in the office, homicide detectives were able to link that they were looking for someone by the name of Detroit from this shooting, and that was also the name of a possible suspect from Officer Johnson's shooting.  And we had already thought that ours . . . was possibly related.  So we began to work on them as they were related.

(Doc. 7, Trial Tr. 479).  After obtaining petitioner's name from a police officer investigating the April 5, 2006 incident, Upchurch presented a photograph of petitioner to Jamisha Willis "to see if we had the right person."  (Doc. 7, Trial Tr. 479-80).  Upchurch explained that she showed Jamisha a "single photo" instead of a photo array because Jamisha "wasn't a witness to the actual event."  (Doc. 7, Trial Tr. 480).  Upchurch stated that "after that was done, . . . I then came back and let Officer Johnson know that there was a positive ID, that this was the person that shot Mr. Willis, according to Mr. Willis'[s] sister, and ordered lineups for everybody involved."

(Doc. 7, Trial Tr. 480).  Upchurch said that she eventually presented a photo array containing petitioner's photograph to the victim.  (Doc. 7, Trial Tr. 482).

Upon review of the trial record, it appears that the trial court never ruled on defense counsel's request to exclude Jamisha Willis's identification testimony; nor did defense counsel renew his request after Detective Upchurch testified at trial.  However, the trial court did give the following instruction to the jury before it retired to deliberate:

> The Court sustained an objection by defense counsel to the testimony of Jamal [sic] Willis'[s] identification of Mr. Robertson as the person who her brother said was the person who shot him because that was hearsay.  That's not based on personal knowledge and therefore it was excluded[.] [Y]ou're not to consider it.

(Doc. 7, Trial Tr. 1238).

In the instant case, petitioner challenges the admission of the victim's statements identifying and describing the person who shot him through the testimony of Jamisha Willis and Detective Upchurch.  (Doc. 1, p. 6).  Petitioner also claims that his Sixth Amendment right to confront the witnesses against him was violated when Detective Upchurch testified that Scott Johnson told her that "his victim picked out Mr. Robertson" as the shooter when they were discussing "similarities" in the cases they each were investigating. (Doc. 1, p. 6; *see also* Doc. 7, Trial Tr. 477).  Petitioner further alleges in Ground Three that his trial counsel was ineffective because he "did not object to many of the problems noted."  (Doc. 1, p. 8).

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the claims raised on direct appeal pertaining to the alleged violations of the Confrontation Clause and petitioner's Sixth Amendment right to the effective assistance of counsel.  The court ruled in pertinent part as follows in addressing petitioner's claims of constitutional error:

In his second assignment of error, Robertson asserts that the trial court erred when it allowed hearsay testimony that violated his Sixth Amendment right to confront his accuser.  Admission of a declarant's prior testimonial statements are barred by the Confrontation Clause of the Sixth Amendment unless the declarant is unavailable to testify at trial and the defendant has had the opportunity to cross-examine the declarant.

Michael Willis did not testify at trial, but his sister, Jamisha, did.  Robertson contends that Michael's statements were admitted through the testimony of Jamisha and Detective Upchurch, and that Robertson did not have any opportunity to cross-examine Michael. . . .  The state concedes that Jamisha's testimony was violative of *Crawford* [*v. Washington,* 541 U.S. 36 (2004)].  But defense counsel's single objection to the testimony was sustained by the trial court.  Not only did defense counsel not object to any other statements made by Jamisha, but during cross-examination, counsel elicited further testimony from Jamisha that reiterated that her brother had identified Robertson.  The absence of any objection on the record amounted to a waiver of all but plain error.  Under the plain-error standard, Robertson can not prevail on his claim "unless, but for the error, the outcome * * * would have been otherwise."  Given the eyewitness account and identification by Maupin, we are unable to conclude that the result of the trial would have been otherwise even if Jamisha's statements had not been allowed.

Detective Upchurch was also permitted to state, over the objection of counsel, that Willis had provided a description of the shooter.  Although framed in terms of a description, and not a statement, the description was still testimonial in nature.  The trial court erred when it overruled Robertson's objection to the statement.  But we conclude that this error was harmless in light of Maupin's eyewitness account.

Robertson also argues that . . . Detective Upchurch's testimony that Officer Johnson had told her that Hayes had identified Robertson also violated his confrontation rights.  But because those statements were about the course of the investigations and were not testimonial in nature, they were not subject to *Crawford*.

****

In his eighth assignment of error, Robertson asserts that he was deprived of the effective assistance of counsel.  To prevail on this assignment of error, Robertson must demonstrate that his counsel's performance was deficient and that, absent his counsel's errors, the result of the trial would have been different.  Our review of counsel's performance must be "highly deferential."

> Robertson argues that his counsel was ineffective because he did not . . . move for a mistrial after Jamisha Willis testified. . . .
>
> ****
>
> [I]t is unlikely that a motion for a mistrial would have been granted after Jamisha's testimony.  Although part of her testimony was violative of *Crawford*, the rest of the testimony was relevant for the purposes of describing the injuries that were suffered by Michael Willis. . . .  We conclude that even if defense counsel had taken the actions now suggested by Robertson, the result of the trial would not have been different.  The state presented overwhelming evidence of Robertson's guilt for each offense.  The eighth assignment of error is overruled.

(Doc. 7, Ex. 10, pp. 6-7, 15-16) (footnote citations omitted).

Generally, in cases involving claims that were adjudicated on the merits by the state courts, the standard of review to apply is set forth in 28 U.S.C. § 2254(d).  Under that provision, a writ of habeas corpus may not issue unless the state courts' adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).  "A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Otte v. Houk,* __ F.3d __, No. 08-3247, 2011 WL 3524301, at *4 (6th Cir. Aug. 12, 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.*

(quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet.  *Id.*  As the Sixth Circuit recently explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards.  *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398 . . . (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court).  It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . .  This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784 . . . (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer,* 537 U.S. 3, 8 . . . (2002) (per curiam).

*Id.* (emphasis in original).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents."  *Harrington*, 131 S.Ct. at 786.  In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-87.

In determining whether or not relief should be granted on a constitutional claim that was adjudicated by the state courts, the "federal habeas court reviewing the state-court judgment must apply the law that controlled 'at the time his state-court conviction became final.'"  *Miller*

*v. Stovall,* 608 F.3d 913, 919 (6th Cir. 2010) (quoting *Williams,* 529 U.S. at 390), *petition for cert. filed,* 79 U.S.L.W. 3404 (U.S. Dec. 21, 2010) (No. 10-851); *see also Otte, supra,* 2011 WL 3524301, at \*4 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte, supra,* 2011 WL 3524301, at \*4 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *petition for cert. filed,* __ U.S.L.W. __ (U.S. Apr. 4, 2011) (No. 10-9911)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

Here, the Ohio Court of Appeals correctly identified (1) the Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36 (2004), as governing the resolution of petitioner's claims of error under the Confrontation Clause, and (2) the clearly-established, two-part standard of review enunciated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984), as governing the adjudication of his corollary ineffective assistance of counsel claim. This Court's inquiry, therefore, turns on whether the state court's adjudication of petitioner's claims involved an unreasonable application of the Supreme Court's *Crawford* and *Strickland* precedents.

**1. *Crawford*: Confrontation Clause.**

The Sixth Amendment's Confrontation Clause, which is applicable to the states through

28

the Fourteenth Amendment's Due Process Clause, *see Pointer v. Texas,* 380 U.S. 400, 406

(1965), guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be

confronted with the witnesses against him."  U.S. Const. amend. VI.  The standards established

by the Supreme Court in assessing whether or not the admission of hearsay testimony violates

that constitutional provision have changed dramatically in recent years.

      For nearly a quarter century before *Crawford* was decided in 2004, the standard set forth

in *Ohio v. Roberts*, 448 U.S. 56 (1980), governed the resolution of the constitutional issue.  In

*Roberts*, 448 U.S. at 66, the Supreme Court held that the Confrontation Clause operates in two

separate ways to restrict the range of admissible hearsay.  "First, in conformance with the

Framers' preference for face-to-face accusation," it usually requires a showing of the hearsay

declarant's unavailability.  *Id.*  Second, in an attempt to reconcile the right of confrontation with

the rules of evidence governing the admission of hearsay testimony, the Court held that the

Confrontation Clause permits such testimony "only if [the hearsay] bears adequate 'indicia of

reliability.'"  *Id.*  The Court explained that "[r]eliability can be inferred without more in a case

where the evidence falls within a firmly rooted hearsay exception," and that "[i]n other cases, the

evidence must be excluded . . . absent a showing of particularized guarantees of trustworthiness."

*Id.*

      In *Crawford*, the Supreme Court reexamined the purpose and scope of the Confrontation

Clause and determined that "history supports two inferences about [its] meaning."  *Crawford*,

541 U.S. at 50.  First, the Court pointed out that "the principal evil at which the Confrontation

Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex*

*parte* examinations as evidence against the accused;" the Court held that the text of the

29

Confrontation Clause reflects that focus by referring to "'witnesses' against the accused,"

defined as "those who 'bear testimony.'"  *Id.* at 50-51.  The Court therefore concluded that the

Confrontation Clause's reach is limited to "testimonial statements," or "solemn declaration[s] or

affirmation[s] made for the purpose of establishing or proving a fact."  *Id.* at 51; *see also*

*Michigan v. Bryant*, __ U.S. __, 131 S.Ct. 1143, 1153 (2011) (pointing out that "[w]e ... limited

the Confrontation Clause's reach to testimonial statements" in *Crawford*).  The Court explained:

> *An accuser who makes a formal statement to government officers bears testimony*
> *in a sense that a person who makes a casual remark to an acquaintance does not.*
> The constitutional text, like the history underlying the common-law right of
> confrontation, thus reflects an especially acute concern with a specific type of
> out-of-court statement.

*Crawford*, 541 U.S. at 51 (emphasis added).  The *Crawford* Court further held that "[t]he

historical record also supports a second proposition:  that the Framers would not have allowed

admission of testimonial statements of a witness who did not appear at trial unless he was

unavailable to testify, *and* the defendant had had a prior opportunity for cross-examination."  *Id.*

at 53-54 (emphasis added).

The Court abrogated *Roberts* to the extent that "*Roberts* conditions the admissibility of

all hearsay evidence on whether it falls under a 'firmly rooted hearsay exception' or bears

'particularized guarantees of trustworthiness.'"  *See id.* at 60-69.  The *Crawford* Court reasoned

that *Roberts* departed from the historical principals it had identified in two respects:

> First, [*Roberts*] is too broad:  It applies the same mode of analysis whether or not
> the hearsay consists of *ex parte* testimony.  This often results in constitutional
> scrutiny in cases that are far removed from the core concerns of the Clause.  At
> the same time, however, the test is too narrow:  It admits statements that *do*
> consist of *ex parte* testimony upon a mere finding of reliability.  This malleable
> standard often fails to protect against paradigmatic confrontation violations.

*Id.* at 60 (emphasis in original).

While recognizing that "our analysis in this case casts doubt on" another Supreme Court precedent rejecting the argument that "we apply the Confrontation Clause only to testimonial statements, . . . thus eliminating the overbreadth issue referred to above," the *Crawford* Court refused to "definitively resolve" that issue.  *Id.* at 61 (citing *White v. Illinois*, 502 U.S. 346, 352-53 (1992)).  Because the hearsay challenged in *Crawford* was testimonial in nature, the Court held only that the Confrontation Clause does "impose an absolute bar to [hearsay] statements that are testimonial, absent a prior opportunity to cross-examine–thus eliminating the excessive narrowness referred to above."  *Id.* at 61.  The Court stated in conclusion:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law–as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.  Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.  We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.  These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Id.* at 68.

Initially, immediately following *Crawford*, lower courts (including the Sixth Circuit) applied *Roberts* in determining the admissibility of nontestimonial hearsay under the Confrontation Clause.  *See, e.g., United States v. Franklin,* 415 F.3d 537, 546 (6th Cir. 2005) (holding that "*Roberts* and its progeny remain the controlling precedents" with respect to nontestimonial hearsay statements, although recognizing that the *Crawford* Court "frankly ridiculed" such an approach); *see also Kowalak v. Scutt,* 712 F.Supp.2d 657, 684-85 (E.D. Mich. 2010) (and cases cited therein).  However, in an en banc decision filed May 18, 2007, the Sixth

31

Circuit held that *Roberts* no longer carries any precedential value, because the Supreme Court has made it clear in decisions rendered after *Crawford* that the Confrontation Clause is "solely concerned with testimonial hearsay."  *United States v. Arnold*, 486 F.3d 177, 192-93 (6th Cir. 2007) (en banc); *see also Whorton v. Bockting,* 549 U.S. 406, 420 (2007) ("Under *Crawford*, . . . the Confrontation Clause has no application to [nontestimonial] statements and therefore permits their admission even if they lack indicia of reliability."); *Davis v. Washington*, 547 U.S. 813, 823-24 (2006) (holding, as "suggested" in *Crawford*, that the Confrontation Clause applies only to testimonial hearsay, as a "limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its 'core,' but its perimeter"); *cf. Desai v. Booker*, 538 F.3d 424, 427 (6th Cir. 2008) (holding that because "*Roberts* . . . is no longer good law," and "the Confrontation Clause no longer applies to non-testimonial statements," a state prisoner challenging the admission of nontestimonial hearsay statements cannot obtain federal habeas relief on the basis of a state court's allegedly unreasonable application of *Roberts*).

Petitioner essentially claims in this case that three categories of statements were improperly admitted in violation of his Sixth Amendment right of confrontation under *Crawford*. As the Ohio Court of Appeals concluded, one set of statements contested by petitioner does not trigger any Confrontation Clause concerns.  Specifically, petitioner challenges Detective Upchurch's testimony relaying a statement made to her by another police officer, Scott Johnson, about "his victim" Andre Hayes's identification of petitioner as the shooter in the May 27, 2006 incident.  As an initial matter, it was reasonable for the Ohio Court of Appeals to determine that the testimony, which was objected to by defense counsel, did not implicate the Confrontation Clause because the evidence was not introduced to establish the identity of the shooter in the May

32

7, 2006 incident, but rather as background about the course of the investigations.  As the Supreme

Court noted in *Crawford,* 549 U.S. at 59 n.9 (citing *Tennessee v. Street,* 471 U.S. 409, 414

(1985)), the Confrontation Clause "does not bar the use of testimonial statements for purposes

other than establishing the truth of the matter asserted."  *Cf. United States v. Cromer*, 389 F.3d

662, 676 (6th Cir. 2005) (citing *United States v. Martin*, 897 F.2d 1368, 1371-72 (6th Cir. 1990),

in support of holding that testimonial statements by an out-of-court declarant, which were

"provided merely by way of background" or "merely to explain why [the] government

commenced investigation," did not implicate the defendant's confrontation right).

      In any event, most importantly, both hearsay declarants–Officer Johnson and Andre

Hayes–testified as witnesses for the State and were subjected to cross-examination by the defense

at petitioner's trial.  (*See* Doc. 7, Trial Tr. 280-337, 374-400).  As the Supreme Court further

noted in *Crawford*, 541 U.S. at 59 n.9, the Confrontation Clause "places no constraints at all on

the use of . . . prior testimonial statements" made by a declarant who "appears for cross-

examination at trial."  *See also California v. Green*, 399 U.S. 149, 162 (1970) ("where the

declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if

anything, support the conclusion that the admission of the out-of-court statement does not create a

confrontation problem"); *Boyer v. Sheets*, No. 2:07cv629, 2008 WL 2329272, at *10 (S.D. Ohio

June 4, 2008) (Report & Recommendation) ("Both [hearsay] witnesses testified at trial, so that

Confrontation Clause questions regarding their out-of-court statements are, pursuant to *Crawford*,

not applicable in the present case."), *adopted*, 2008 WL 3539107 (S.D. Ohio Aug. 11, 2008); *cf.*

*Brady v. Collins*, No. 1:09cv09, 2009 WL 6407543, at *14 (N.D. Ohio Sept. 15, 2009) (Report &

Recommendation), *adopted,* 2010 WL 1741113, at *11 (N.D. Ohio Apr. 29, 2010).  Therefore,

the undersigned concludes that the state appellate court not only reasonably, but also correctly, determined that the admission of Johnson's and Hayes's hearsay statements did not violate petitioner's Sixth Amendment confrontation right.

The second set of statements challenged by petitioner stem from Jamisha Willis's testimony, wherein Jamisha referred to statements made to her by her brother, the victim of the March 7, 2006 shooting, identifying petitioner as his assailant;[8] according to Jamisha, the victim made the statements when they were driving in a car together soon after the shooting occurred and saw petitioner walking down the street. Because the State had conceded "Jamisha's testimony was violative of *Crawford*," the Ohio Court of Appeals found that the testimony was admitted in violation of petitioner's Sixth Amendment right of confrontation. (*See* Doc. 7, Ex. 10, pp. 6, 16).

However, there is simply no evidence in the record to suggest that the challenged statements relayed in a private conversation between brother and sister were testimonial in nature and thus proscribed by *Crawford* as the State had conceded. Indeed, a strong argument can be made to the contrary–that the remarks were not testimonial because they were made voluntarily, spontaneously and perhaps even reflexively by the victim to a family member, who was with him when he noticed the person who had recently shot him walking down the street. *Cf. Doan v. Carter,* 548 F.3d 449, 458 (6th Cir. 2008) (finding that murder victim's "'statements to friends

---

[8]In addressing this particular allegation of error, the undersigned recognizes that respondent has argued in the return of writ that petitioner procedurally defaulted the issue, which was reviewed only for "plain error" on direct appeal by the state courts. (*See* Doc. 7, Brief, p. 30). However, at trial, defense counsel did assert one objection to the hearsay testimony, which was sustained, and also requested at the close of Jamisha Willis's cross-examination that her testimony be stricken from the record. Because defense counsel did voice concerns during trial about the witness's hearsay testimony, the Court is reluctant to find the claim is procedurally barred from review. Therefore, without deciding the thorny procedural question, the undersigned will assume that the claim is not waived and is subject to review on the merits.

and neighbors about abuse and intimidation' allegedly inflicted by [the petitioner] are nontestimonial statements and are not subject to the Confrontation Clause"), *cert. denied*, 130 S.Ct. 366 (2009); *Arnold,* 486 F.3d at 191-92 (finding that the victim's "exclamation–'that's him, that's the guy that pulled the gun on me'–was prompted not by *ex parte* questioning by [police] officers but by [the defendant's] sudden reappearance" and, therefore, was not testimonial); *United States v. Johnson,* 440 F.3d 832, 843 (6th Cir. 2006) (holding that statements made to a confidential informant by a person who had a "longstanding relationship" with the informant, but was unaware of the informant's complicity with law enforcement officials, were not testimonial within the meaning of *Crawford*); *Franklin*, 415 F.3d at 545 (and numerous cases cited therein) (holding that statements "by happenstance" to a "friend and confidant" were "not testimonial for purposes of the confrontation clause" under *Crawford*); *Jackson v. Renico,* 179 F. App'x 249, 253-55 (6th Cir. 2006) (finding that a "spontaneous" statement "voluntarily given to a friend" without prompting or inquiry was nontestimonial in nature); *Coker v. Harry*, No. 5:05cv131, 2008 WL 4377655, at *7 (W.D. Mich. Sept. 23, 2008) (and numerous cases cited therein) ("statements made to family members, friends and acquaintances are not testimonial" within the meaning of *Crawford*).[9]  Therefore, the undersigned concludes that contrary to the state courts' finding of constitutional error, Jamisha Willis's testimony does not pose a Confrontation Clause issue.

The third category of statements challenged by petitioner does pertain to testimonial statements made by the victim, Michael Willis, to Detective Upchurch during the course of her

---

[9]*See also Davis*, 547 U.S. at 825 (citing the following Supreme Court precedents as involving "clearly nontestimonial" statements: *Bourjaily v. United States*, 483 U.S. 171, 181-84 (1987), which involved "statements made unwittingly to a Government informant;" and *Dutton v. Evans,* 400 U.S. 74, 87-89 (1970) (plurality opinion), which involved "statements from one prisoner to another").

investigation of the March 7, 2006 shooting incident.  Specifically, Detective Upchurch was permitted, over defense counsel's objection, to testify that the victim provided a description of the shooter when they met on March 22, 2006, and more specifically, to relay the substance of the description that the victim had provided to her.  As the Ohio Court of Appeals reasonably concluded, the description relayed by the victim to Upchurch was testimonial in nature and was not offered merely as background, or to establish "the type of person" targeted for further investigation as the prosecutor had argued at trial, but rather for the truth of the matter asserted–to establish that petitioner, who fit the victim's detailed description, was the person who shot Michael Willis on March 7, 2006.  *Cf. Cromer,* 389 F.3d at 676 (finding that a non-testifying confidential informant's testimonial statement to police officers that one of the subjects involved in the criminal activity under investigation was called "Nut," was "not offered merely to explain why a government investigation was undertaken or to demonstrate the effect of the out-of-court statements on the officers," but rather for the purpose of establishing that the person nicknamed "Nut," i.e., the defendant, was guilty of the charged offense).  Because Willis did not appear at trial, and petitioner never had a prior opportunity to cross-examine him, it was reasonable for the state appellate court to conclude that the admission of Upchurch's testimony regarding the description provided by Willis amounted to a violation under *Crawford* of petitioner's Sixth Amendment right to confront the witnesses against him.

The inquiry does not end here, however.  As the Ohio Court of Appeals recognized in addressing the errors that it found under *Crawford,* violations of the Confrontation Clause are subject to harmless error review.  *See, e.g.*, *Fulcher v. Motley,* 444 F.3d 791, 808-09 (6th Cir. 2006) (citing *Hill v. Hofbauer,* 337 F.3d 706, 718 (6th Cir. 2003)); *Hawkins v. Ganshimer*, 286 F.

36

App'x 896, 902 (6th Cir. 2008); *see also United States v. Powers*, 500 F.3d 500, 510 (6th Cir.

2007) (and cases cited therein).  In this federal habeas proceeding, the court "must assess the

prejudicial impact of constitutional error in [the] state-court criminal trial under the 'substantial

and injurious effect' standard" established by the Supreme Court in *Brecht v. Abrahamson,* 507

U.S. 619 (1993).  *See Hawkins*, 286 F. App'x at 902 (quoting *Fry v. Pliler*, 551 U.S. 112, 121-22

(2007)).  Under that standard, "constitutional error is cause for federal habeas relief only if it has

'a substantial and injurious effect or influence in determining the jury's verdict.'"  *Hill*, 337 F.3d

at 718 (quoting *Brecht*, 507 U.S. at 623).

 To determine the effect of the error under *Brecht*, the court must "consider both the impact

of the improperly admitted evidence and the overall weight of the evidence presented at trial."

*Peterson v. Warren,* 311 F. App'x 798, 805 (6th Cir. 2009).   The Sixth Circuit has stated:

> Neither side has the "burden" of proving that the error was harmless (or not), but
> when "the record is so evenly balanced" that "a federal judge in a habeas
> proceeding is in grave doubt about whether a trial error of federal law had
> 'substantial and injurious effect or influence in determining the jury's verdict,' that
> error is not harmless.  And, the petitioner must win."

*Fulcher*, 444 F.3d at 809 (quoting *O'Neal v. McAninch,* 513 U.S. 432, 436-37 (1995)).

 In this case, upon consideration of the overall weight of evidence presented at trial, the

undersigned concludes that the impact of the improperly admitted evidence was harmless under

*Brecht* and, as the state appellate court reasonably determined, does not warrant reversal of

petitioner's convictions.

 First, the challenged hearsay testimony related only to the shooting incident on March 7,

2006 involving victim Michael Willis.  Therefore, it is highly unlikely that any evidence admitted

in violation of *Crawford* was even considered by the jury in determining petitioner's guilt or

innocence on the charges stemming from the separate shooting incidents on March 27 and April 5, 2006 involving victims Andre Hayes and Matthew Cox. In any event, overwhelming evidence was presented at trial to establish petitioner's guilt on those other charges. Hayes unequivocally identified petitioner as the person who shot him on March 27, 2006; Hayes's testimony was corroborated by the investigating police officer, Scott Johnson, as well as evidence establishing a match between petitioner's fingerprints and fingerprints obtained from Hayes's bootleg cab where the shooting occurred. (*See* Doc. 7, Trial Tr. 280-304, 324, 374-84, 744-62). In addition, numerous eyewitnesses testified regarding the April 5, 2006 shooting that resulted in Cox's death. Lawrence Maupin, Tange Wilson and Christina Julian provided corroborating testimony regarding the events they each observed and petitioner's identity as the person who shot Cox; although Amond Raney gave equivocal testimony at trial, he also identified petitioner as the shooter during the police investigation and before the grand jury and admitted at trial that "[a]t the time I was convinced it was him." (Doc. 7, Trial Tr. 538-611, 621-661, 681-711, 808-22).

A closer question is presented regarding the March 7, 2006 shooting incident. As discussed above, although the Ohio Court of Appeals found Jamisha Willis's testimony was violative of *Crawford*, it appears that only Detective Upchurch's testimony relaying Willis's "testimonial" description of the shooter amounted to a Confrontation Clause violation under *Crawford* for purposes of harmless error review.

As the Ohio Court of Appeals pointed out in finding no grounds for reversible error in this case, Lawrence Maupin testified at trial that he witnessed the March 7, 2006 shooting and separately identified petitioner as the person who shot Willis. (Doc. 7, Trial Tr. 796-806). Maupin stated that he was standing at the corner of 15th and Republic Streets and that the

shooting occurred when Willis was trying to break up a fight on Republic Street between two girls and refused to comply with petitioner's request to let the fight continue.  (Doc. 7, Trial Tr. 798-802).  Maupin observed petitioner shoot a revolver three or four times aimed at Willis's back; before leaving the scene, Maupin saw Willis run toward 15th Street, where he "collapsed" at the corner.  (Doc. 7, Trial Tr. 802, 804).  Maupin's testimony was corroborated to the extent that evidence was introduced that Willis was shot twice in the lower part of his back near the buttocks, and that the police officer who responded to the scene found Willis lying on the ground at the corner of 15th and Republic Streets and testified that Willis was not shot at that location but "right around the corner, on Republic Street, just south of 15th."  (Doc. 7, Trial Tr. 343-45, 452, 454).

At trial, the defense sought to undermine Maupin's credibility.  Specifically, defense counsel called witnesses who testified that petitioner and Maupin were not friends; a witness who stated that Maupin could not have witnessed the Cox shooting because he was with his girlfriend and her walking up Race Street at the time the shooting occurred; and another witness who testified that when he was in prison with Maupin, Maupin said he was going to "basically lie" at petitioner's trial to obtain a more lenient sentence on criminal charges that he faced.  (*See* Doc. 7, Trial Tr. 1035, 1059, 1108).  On the other hand, evidence was presented demonstrating Maupin's credibility as an eyewitenss to both the Cox and Willis shootings, thereby undermining the credibility of the defense witnesses, to the extent that Maupin's account of the Cox shooting accorded with accounts given by other eyewitnesses to that shooting.  Moreover, as discussed above, Maupin's account of the Willis shooting was corroborated by other evidence presented about that incident.

In sum, upon review of the entire record, the undersigned concludes that when weighed with all the evidence presented at trial, Detective Upchurch's improper hearsay testimony did not have a substantial and injurious effect or influence in determining the jury's verdicts pertaining either to the shootings that occurred on March 27 and April 5, 2006 or, more specifically, to the shooting of Michael Willis on March 7, 2006.  Assuming, as the state courts found, that Jamisha Willis's testimony was also proscribed by *Crawford*, a more troublesome issue is presented regarding the impact of the improperly admitted evidence on the jury's verdicts relating to the March 7, 2006 shooting.  However, although the question is admittedly close in that scenario, Maupin's eyewitness account of the March 7, 2006 shooting, which was corroborated by other evidence regarding that shooting and was bolstered by evidence demonstrating Maupin's credibility as an eyewitness to both the Willis and Cox shootings, was sufficient to tilt the scales in the State's favor.  Therefore, the Court concludes that the record is not "so evenly balanced" that one is left in "grave doubt" as to whether evidence improperly admitted in violation of the Confrontation Clause substantially and prejudicially influenced the jury's verdicts.

Accordingly, the Court concludes that petitioner is not entitled to habeas relief based on his claim in Ground Two of the petition challenging Jamisha Willis's and Detective Upchurch's testimony because the witnesses relayed hearsay statements introduced in violation of his Sixth Amendment right of confrontation under *Crawford*.

## 2. *Strickland*:  Ineffective Assistance Of Counsel.

Petitioner also has alleged in Ground Three that his trial counsel was ineffective for failing to lodge appropriate objections to the challenged hearsay testimony of Jamisha Willis and Detective Upchurch.  As the Ohio Court of Appeals recognized in addressing the ineffective assistance of counsel claim that was asserted on direct appeal, petitioner is not entitled to relief

under *Strickland* unless he demonstrates both (1) his trial attorney made such serious errors that he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense.  *See Strickland,* 466 U.S. at 687.

Under the first prong of the *Strickland* test, it must be shown that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id.* at 688.  In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that the challenged conduct fell within the wide range of reasonable professional assistance.  *Id.* at 689.  To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the result of the trial would have been different.  *See Strickland,* 466 U.S. at 694.  Petitioner has met his burden if he shows that the trial outcome would "reasonably likely have been different absent the errors."  *Id.* at 695.  The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance.  The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground.  *Id*. at 697.

As an initial matter, petitioner is unable to prevail on any claim that his trial counsel performed deficiently under the first prong of the *Strickland* test with respect to Officer Upchurch's hearsay testimony.  Contrary to petitioner's contention, petitioner's counsel did object at trial to the two alleged instances of error under *Crawford* that occurred during Upchurch's testimony, thereby preserving the issues for state appellate review.  (*See* Doc. 7, Trial Tr. 475, 477).

With respect to Jamisha Willis's testimony, petitioner's counsel lodged an objection,

which was sustained, when Jamisha first testified that her brother had pointed out petitioner to her and told her that petitioner was the person who shot him.  (*See* Doc. 7, Trial Tr. 348). Petitioner's counsel also sought to have Jamisha Willis's testimony excluded from the record after Jamisha reiterated numerous times during her cross-examination that her brother had identified petitioner as his assailant and further testified on cross-examination that she herself identified petitioner as her brother's shooter from photographs shown to her by Detective Upchurch.  (*See* Doc. 7, Trial Tr. 370-73).  Petitioner has suggested that his counsel should have done more at that point to challenge Jamisha's testimony by moving for a mistrial or by renewing his request to exclude Jamisha's testimony after Detective Upchurch testified.  (*See* Doc. 7, Ex. 7, p. 29).

However, petitioner has not shown that any error by defense counsel in failing to take additional steps to challenge Jamisha's testimony prejudicially affected the outcome of the trial under the second prong of the *Strickland* test.  As discussed above in addressing the underlying claim of constitutional error under *Crawford*, it appears that the Jamisha's testimony concerned nontestimonial statements that are not proscribed by *Crawford* and fall outside the scope of the Confrontation Clause.  Petitioner never argued to the state courts that he was denied a fair trial because Jamisha's testimony was improperly admitted under state evidentiary rules governing the admission of hearsay evidence.  In any event, even if such an argument had been asserted, an argument can be made that the challenged hearsay fell within the "excited utterance" exception to the hearsay rule or contained sufficient indicia of reliability to pass constitutional muster.  *Cf. Jackson*, 179 F. App'x at 255 (in the absence of any evidence that the declarant made statements "to curry favor" with law enforcement authorities, his "non-testimonial statement made spontaneously to a friend was properly admitted . . . because it bore particularized guarantees of

trustworthiness"); *Wheeler v. Jones,* 59 F. App'x 23, 29 (6th Cir. 2003) (in the absence of any

evidence suggesting that the murder victim was lying, the court found that her statements bore

"adequate indicia of reliability" given that she "personally experienced the events" and made the

statements "based on her personal knowledge" soon after the events occurred); *see also Johnson,*

440 F.3d at 845 (upholding a finding of "sufficient and particularized guarantees of

trustworthiness" based on the long-standing friendship between the declarant and informant; the

fact that the declarant "had no reason to suspect that [the informant] was cooperating with law

enforcement and therefore had no motivation to lie or deceive him;" and that the declarant "spoke

freely about many subjects"); *Franklin,* 415 F.3d at 548 (statements made in "confidential

exchanges with a long-time friend–a friend [the declarant] had no reason to conclude would

reveal those statements to law enforcement," bore "particularized guarantees of trustworthiness"

and were, therefore, admissible); *Kowalak*, 712 F.Supp.2d at 668, 686 n.2 (noting that the murder

victim's statement to her daughter-in-law regarding a death threat she had recently received was

admissible under the firmly-rooted "excited utterance exception" to the hearsay rule). *Coker,*

*supra*, 2008 WL 4377655, at *6-7 (upholding state court's finding of "sufficient circumstantial

guarantees of trustworthiness" where the out-of-court declarant "(1) consistently made the same

statement, (2) made the statement voluntarily, (3) had no motive to lie . . ., and (4) made the

statement contemporaneously and spontaneously to a loved one").

    In any event, even assuming, as the state courts found, that error occurred either as a

matter of state or federal constitutional law when Jamisha testified about her brother's

identification of petitioner as his assailant, petitioner is unable to demonstrate that a "reasonable

probability" exists that, but for his counsel's errors, the result of the trial would have been

different.  *See Strickland,* 466 U.S. at 694.  As discussed above in addressing the Confrontation

Clause issue, it is not reasonably likely that Jamisha's testimony pertaining to the March 7, 2006 shooting incident was even considered by the jury in determining petitioner's guilt or innocence on the charges stemming from the separate shootings on March 27 and April 5, 2006. Although the question is closer with respect to charges stemming from the March 7, 2006 shooting, it nevertheless was reasonable for the Ohio Court of Appeals to conclude that the "result of the trial would not have been different." (*See* Doc. 7, Ex. 10, p. 16). The state court reasonably found a lack of prejudice in light of the "overwhelming evidence of Robertson's guilt" based on Maupin's corroborated eyewitness account of the shooting. (Doc. 7, Ex. 10, p. 16). In addition, the trial court reduced the risk of any prejudice by explicitly instructing the jury that it was prohibited from considering Jamisha's testimony identifying "Mr. Robertson as the person who her brother said was the person who shot him." (Doc. 7, Ex. 10, p. 16 & Trial Tr. 1238).

**3. Conclusion.**

Accordingly, in sum, the undersigned concludes that the Ohio courts' adjudication of the Confrontation Clause claims alleged in Ground Two of the petition, as well as the corollary ineffective assistance of counsel claims alleged in Ground Three of the petition, neither was contrary to nor involved an unreasonable application of the Supreme Court's *Crawford* and *Strickland* precedents. In addition, the state courts' findings and conclusions were based on a reasonable determination of the facts in light of the evidence presented at trial. Petitioner, therefore, is not entitled to relief based on the grounds for relief as alleged in Grounds Two and Three.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

44

2.  A certificate of appealability should not issue with respect to the prosecutorial misconduct claims alleged in Ground One of the petition, as well as the corollary ineffective assistance of counsel claim alleged in Ground Three of the petition, which this Court has concluded are waived and thus barred from review on procedural grounds; under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling or whether petitioner has stated a viable constitutional claim for relief in those grounds.

A certificate of appealability also should not issue with respect to the remaining ineffective assistance of counsel claim alleged in Ground Three of the petition, which was addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further."  *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

However, a certificate of appealability should issue with respect to petitioner's constitutional claims alleged in Ground Two of the petition, which also were addressed on the merits herein, but only to the extent that petitioner claims that hearsay evidence admitted in violation of the Confrontation Clause does not constitute harmless error as it relates to his convictions on charges stemming from the March 7, 2006 shooting incident involving Michael Willis.  Petitioner has stated a "viable claim of the denial of a constitutional right" with respect to that one limited issue.

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would be taken in "good faith," and, therefore, should **GRANT**

45

petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R.

App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

August 30, 2011                                  s/J. Gregory Wehrman
                                                          J. Gregory Wehrman
                                                          United States Magistrate Judge

C:\Documents and Settings\tammy\Local Settings\Temp\notes097731\10-46denypet.waiv-plainerr.prosmiscond-iac.ConfrontCl-hearsay-iac.wpd
cbc

46

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DELRICO ROBERTSON,                                   Case No. 1:10-cv-46
     Petitioner,

                                                   Dlott, J.
     vs                                          Wehrman, M.J.

WARDEN, SOUTHERN OHIO
CORRECTIONAL FACILITY,
     Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).